UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NINA REEVES | : |
|     Plaintiff, | : |
| v. | : |
| | : |
| SCOTT COOPCHIK | :   Civil No. 3:08CV1544 (PCD) |
| | : |
|     Defendant. | : |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Nina Reeves, brings this personal injury action alleging that Defendant, Scott Coopchik, negligently and carelessly and/or recklessly caused Plaintiff injury and damages while she was a passenger on his motorboat.  Defendant Scott Coopchik moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment as to all claims.  For the reasons stated herein, Defendant's Motion for Summary Judgment [Doc. No. 14] is **denied**.

**I.     Background**

Plaintiff, Nina Reeves, is a resident of the State of New York.  Defendant, Scott Coopchik, is a resident of the State of Connecticut.  On September 4, 2006, at about 3:30 p.m., Plaintiff suffered a spinal injury while a passenger on a boat owned and operated by Defendant. (Compl. ¶¶ 3-6.)

At the time of the incident, Defendant, a 57 year old retired businessman, was 6'1" and 220 pounds.  Plaintiff, a 52 year old self-employed businesswoman, was 5'5" and 114 pounds. (Def.'s Local Rule 56(a)(1) Stmt. ¶ 1.[1])  Defendant owned a 23 foot Rinker Cuddy Cabin motorboat,

---

[1] Facts taken from Def.'s Local Rule 56(a)(1) Stmt. are uncontroverted unless otherwise noted.

which he kept at the dock of his condominium in Stamford, Connecticut. (Id. ¶ 3.) Prior to September 4, 2006, Defendant had spent approximately 100 hours navigating the Cuddy Cabin motorboat. (Coopchik Aff. ¶ 5.) Defendant was an experienced boater, having owned and navigated several boats in the Long Island Sound and Carribean since the 1970s. (Id. ¶ 4.) He had a valid boating license and had taken numerous boating courses. (Def.'s Local Rule 56(a)(1) Stmt. ¶ 12.)

Plaintiff and Defendant were social acquaintances. On September 4, 2006, Plaintiff drove from New York City to Stamford, Connecticut to spend the day on Defendant's boat. Defendant took Plaintiff in the motorboat from his home in Stamford to a restaurant in Norwalk Harbor, Connecticut, to have lunch. (Id. ¶ 3.) September 4, 2006 was a clear and sunny day. Defendant states that the water was calm, although Plaintiff recalls that it was somewhat "choppy." (See Coopchik Dep. at 55; Reeves Dep. at 26.)

Plaintiff arrived in Connecticut some time before noon. Both Plaintiff and Defendant took Dramamine before leaving Stamford, although they dispute whether they took the medicine on land or after boarding. (See Coopchik Dep. at 37; Reeves Dep. at 32.) The boat ride from Stamford to Norwalk Harbor took over an hour and the trip was uneventful. (Def.'s Local Rule 56(a)(1) Stmt ¶ 4.) Plaintiff and Defendant sat at the restaurant for about an hour and a half. They each had one alcoholic drink, as well as an appetizer, seafood, and dessert. (Coopchik Dep. at 51-52.)

Between 3 and 4 p.m., Plaintiff and Defendant returned to the boat. Defendant navigated the boat slowly through Norwalk Harbor at about 5 miles per hour. (Def.'s Local Rule 56(a)(1) Stmt ¶ 7.) The boat then entered a 200 foot wide channel and Defendant accelerated to a planing

speed of 16-18 miles per hour. (Id.)  At this time, Defendant's boat crossed the wake of a 30-35 foot fishing vessel traveling "swiftly" in the opposite direction. (Reeves Dep. at 42.)  As Defendant's boat crossed the 1 foot wake, Plaintiff screamed that she hurt her back.  Plaintiff argues that the boat "was airborne and came down with a crash" as it crossed the wake. (Id.)  Defendant, however, testified that the boat merely "bounced." (Coopchik Dep. at 63.)   Plaintiff submits that crossing the wake caused her to rise six inches off the seat (Reeves Dep. at 52) and the following impact fractured her L1 vertebrae. (Id. at 61-65.)

Plaintiff testified that her injuries caused severe pain and immobility.  Immediately following her injury, Plaintiff was restricted to bed rest and required prescription pain medication.  Until 2007, Plaintiff underwent physical therapy on a regular basis. (Id. at 66-70.)  Plaintiff's MRIs show a compression fracture in 2006, which had healed completely by 2009. (Pl.'s Ex. E, May 21, 2009 Medical Exam.)

## II.     Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).  The moving party bears the burden of establishing that summary judgment is appropriate.  Anderson, 477 U.S. at 225.  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury.  Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

**III.    Discussion**

**A. Plaintiff's Expert Report**

Defendant argues that the Court should disregard Plaintiff's expert report because it is unauthenticated and untimely.  However, Robert Miller's report, submitted as Plaintiff's Exhibit F, complies with FED. R. OF CIV. P. 26(a)(2)(B), as it is a written report, signed and dated, stating the expert's qualifications, opinion, basis for the opinion, and material reviewed.  In fact, Defendant's expert report appears in the same form. (See Pl.'s Ex. G, Ahlstrom Report.)

Defendant is correct that Plaintiff's disclosure of the Miller Report was untimely under FED. R. CIV. P. 26(a)(2) as well as the Court's Scheduling Order [Doc. Nos. 6, 13].  Therefore, the Court could, in its discretion, disregard the report.  See Fed. R. Civ. Pr. 37(c); A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment, 487 F. Supp. 2d 33 (D. Conn. 2007). However, disregarding Plaintiff's expert is a drastic measure that the Court finds unnecessary. The untimeliness had little, if any, prejudicial effect on Defendant's Motion.  Defendant had already hired his own expert and used the resulting report in his Motion for Summary Judgment. In addition, Defendant was able to respond to the Miller Report in his reply brief.  Therefore, the Court declines to take the draconian measure of striking Plaintiff's Ex. F.

**B. Negligence**

Plaintiff alleges that Defendant caused her injury by his negligent and/or reckless operation of the Rinker Cuddy Cabin motorboat.  Defendant's Motion for Summary Judgment, however, addresses only Plaintiff's arguments concerning negligence.  Therefore, this Ruling is directed to Count I of the Complaint [Doc. No. 1].

Defendant is correct that negligence under maritime law contains the same elements as under common law. See Petition of the Kinsman Transit Co., 338 F.2d 708, 721 (2d Cir. 1964)

(using <u>Palsgraf v. Long Island RR.,</u> 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928) to analyze negligence in a maritime case).

Under Connecticut law, "the essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." <u>RK Constructors, Inc. v. Fusco Corp.</u>, 650 A.2d 153, 155 (Conn. 1994); <u>Catz v. Rubenstein</u>, 513 A.2d 982, 101 (Conn. 1986); <u>Calderwood v. Bender</u>, 457 A.2d 313, 315 (Conn. 1983); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 30, ¶. 164-65. Here, causation and actual injury are not disputed. Neither is the fact that Defendant owed Plaintiff a duty of reasonable care as operator of the boat on which she was a passenger. "Although some older cases called for a higher degree of care aboard ship, it is now clear in this Circuit that the appropriate standard is one of reasonable care under the circumstances." <u>Monteleone v. Bahama Cruise Line, Inc.</u>, 838 F.2d 63, 65 (2d Cir. 1988). The only issue in dispute is whether Defendant breached this duty.

Therefore, the issue to be decided at summary judgement is whether a genuine issue of material fact exists to preclude the Court from deciding as a matter of law that Defendant acted with reasonable care in his operation of the Rinker Cuddy Cabin Motorboat on September 4, 2006. This inquiry does not lend itself to summary judgment, as "it is very hard to show that there are no questions of material fact in negligence cases. Summary judgments are difficult to obtain in negligence actions because, in most cases, the issue of whether conduct is negligent is a factual determination, whereas the question to be determined on summary judgment is whether there are factual issues to be tried." <u>Spencer v. Cohen</u>, 886 F. Supp. 2d 235, 238 (N.D.N.Y.1995) (<u>citing</u> <u>Ortiz v. Rosner</u>, 817 F. Supp. 348, 350-51 (S.D.N.Y.1993); <u>INA Aviation Corp. v. United States</u>, 468 F. Supp. 695, 699 (E.D.N.Y.1979), aff'd, 610 F.2d 806 (2d Cir.1979)); <u>see also Labounty v.</u>

All Place Property

2009 WL 2962042 at *2 (Conn. Super. Aug. 18, 2009).

Defendant cites to Grinberg v. Wham, 2005 WL 1971850 (Conn. Super. July 27, 2005) and Miller v. Ryan, 2009 WL 323342 (Conn. Super. Jan. 13, 2009), two Connecticut cases finding no liability for the defendant in similar boating accidents. However, both cases were decided after a bench trial, not at the stage of summary judgment. As noted above, the conclusion of negligence is necessarily one of fact. "Negligence requires the trier of fact to determine whether the standard of care was met in a specific situation" McCormack v. Lake Compounce, L.P., 2009 WL 3366297 at *2 (Conn. Super. Sept. 14, 2009). Therefore, Defendant's reliance on these cases is unpersuasive. They do not support Defendant's contention that there are no questions of fact to be decided by a jury.

Here, the Court finds several material questions of fact that must be decided by a trier of fact. First, there is the question of whether Defendant's boat operating abilities were impaired by alcohol and Dramamine medication. Plaintiff and Defendant agree that some time before operating the boat Defendant took a non-drowsy Dramamine, an over-the-counter medication to prevent nausea. They also agree that Defendant had a martini at lunch in Norwalk. (Coopchik Dep. at 37, 52.) Defendant testified that he felt no effect from either. (Id. at 59.) He logically argues that one alcoholic drink, in combination with a large lunch of bread, seafood, and dessert does not impair the abilities of a 220 pound man. However, Plaintiff testified that "he (Defendant) felt a little tipsy" towards the end of lunch (Reeves Dep. at 36) and joked about "feeling high" as they returned to the boat. (Id. at 40.) Determining which of these contrasting accounts to credit is the role of the fact-finder and is not proper on a motion for summary

judgment. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). The competing testimony therefore creates a question of material fact as to Defendant's physical state at the time of Plaintiff's injury.

Second, there are material questions of fact as to whether Defendant navigated the wake in the safest manner, in compliance with his duty of care. Plaintiff argues that Defendant did not offer her safety instructions for riding in the boat (Reeves Dep. at 28), although it is unclear how instructions might have prevented her injury. Plaintiff also testified that Defendant "turned the boat into the wake and accelerated over it." (Id. at 42.) Defendant, however, testified that he crossed the wake at the planing speed that he was already traveling and did not accelerate. (Coopchik Aff. ¶ 15.) Defendant further testified that he could not avoid the wake because the boat was already as close to the right bank of the 200 foot wide channel as safety allowed. (Id. ¶ 15.) Defendant also argued that the 45 degree angle at which he crossed the wake is the recommended method for minimizing a wake's impact. (Id.)

Furthermore, Captain Ahlstrom, an expert in boat safety, found that given the location of the boat in the channel, Defendant's handling of the wake was "the best possible solution given the circumstances." (Ahlstrom Aff. ¶ 6(d).) Ahlstrom testified that navigating over a wake at a 45 degree angle is the recommended course. He concluded that Defendant practiced good situation awareness and handled the motorboat in a "safe and prudent" manner. (Id. at ¶ 6.) However, Robert Miller, certified accident reconstructionist, found that although crossing a wake at a 45 degree angle is generally recommended, Defendant should have slowed the boat below planing speed before crossing. (Pl.'s Ex. F, Miller Report.) Miller posits that Defendant "failed to appreciate the size of the wake, the speed of his vessel, and take actions to minimize the impact

of the wake." (Id.)  Plaintiff's and Defendant's differing accounts of the incident raise questions of material fact that must be decided by a trier of fact.  Deciding the weight to afford each expert's testimony and assessing their credibility are necessary to choose between their differing conclusions, but not proper on a motion for summary judgment.  See Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  Therefore, whether Defendant acted with reasonable care under the circumstances must be decided at trial.

**IV.     Conclusion**

Defendant's motion for summary judgment [Doc. No. 14] is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut, October  27 , 2009.

/s/
Peter C. Dorsey, U.S.D.J.